**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| Robert Ellis Jones, | |
|     Plaintiff, | Case No. 2:06-CV-527 DAK |
|   v. | |
| Richard Garden et al., | **MEMORANDUM DECISION AND SCREENING ORDER** |
|     Defendants. | |

    Plaintiff, Robert Ellis Jones, an inmate at the Utah State Prison, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (2006). Plaintiff was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See* 28 *id.* 1915. This case is now before the Court for consideration of Plaintiff's motion for appointed counsel and for screening of Plaintiff's Complaint and Amended Complaint under 28 U.S.C. § 1915(e).

## ANALYSIS

### I. Motion for Appointed Counsel

    Plaintiffs in civil cases do not have a constitutional right to counsel. *See Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995); *Bee v. Utah State Prison*, 823 F.2d 397, 399 (10th Cir. 1987). However, the court may, in its discretion, appoint counsel for indigent inmates under 28 U.S.C. § 1915(e)(1). *See* 28 U.S.C.A. § 1915(e)(1) (West 2003); *Carper*, 54 F.3d at 617; *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The

burden is upon the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985). When deciding whether to appoint counsel, the Court considers a variety of factors "including 'the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims.'" *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (quoting *Williams*, 926 F.2d at 996); *accord McCarthy*, 753 F.2d at 838-39.

Plaintiff has not satisfied his burden of showing that appointed counsel is warranted in this case. First, there are no complex legal or procedural issues before the Court at this early stage of the litigation which require legal expertise. The only issue presently under consideration is the sufficiency of Plaintiff's allegations. Second, Plaintiff has not shown that he is incapacitated or otherwise unable to present his claims. In fact, Plaintiff's numerous filings, both here and in the Tenth Circuit, show he is able to adequately represent himself. Finally, Plaintiff has not shown that his claims have sufficient merit to warrant appointed counsel. Thus, Plaintiff's motions for appointed counsel are denied.

## II. Screening Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B), a court shall dismiss any

claims in a complaint filed *in forma pauperis* if they are frivolous, malicious or fail to state a claim upon which relief may be granted. "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999). When reviewing the sufficiency of a complaint the Court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

Because Plaintiff is proceeding *pro se* the Court must construe his pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Id.* However, "[t]he broad reading of the plaintiff's complaint does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.* While Plaintiff need not describe every fact in specific detail, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Id.*

### III. Plaintiff's Allegations

Plaintiff alleges that Defendants subjected him to cruel and unusual punishment, in violation of the Eighth Amendment, by denying him adequate medical treatment for a suspicious skin

lesion and for chronic back pain.  The Amended Complaint names as defendants various prison medical personnel in both their individual and official capacities, Dr. Pramod K. Sharma, the University of Utah, and the Huntsman Cancer Institute.  Plaintiff seeks compensatory and punitive damages totaling $25 million from each defendant, as well as declaratory and injunctive relief.

### A. Skin Lesion

Plaintiff alleges that in August 2004, while incarcerated at the Utah State Prison, he noticed a small lump on his scalp for which he sought medical attention.  Prison medical staff examined the lesion and ordered a biopsy to determine whether it was cancerous.  The biopsy was first sent to a lab in Seattle, Washington, but initial tests proved inconclusive.  It was then sent to the University of San Francisco which ultimately determined that it was not melanoma.  Several months later, Plaintiff was examined by Dr. Pramod K. Sharma, a specialist at the Huntsman Cancer Institute.  Based on his visual examination, Dr. Sharma determined that the lesion might, indeed, be cancerous and recommended that it be surgically removed.  Plaintiff states that he agreed to the surgery, despite not being fully informed about its ramifications, because he has a family history of cancer and was afraid he might die if he refused.

On December 2, 2004, Plaintiff underwent surgery at the University of Utah Medical Center (UUMC) to remove the lesion and

repair his scalp using a skin graft taken from his left leg. Doctors also performed a lymph node biopsy for further testing. The lymph node biopsy revealed "no pathologic diagnosis," and Plaintiff asserts that the lesion was later determined to be merely a mole (melanocytic nevus) which was not cancerous.

Plaintiff does not allege any complications as a result of the surgery, however, he asserts that doctors were negligent in recommending surgery without first doing additional tests to verify whether the lesion was cancerous. In addition to the pain and suffering Plaintiff experienced from the surgery he also alleges that the procedures left him with permanent scars on his leg, neck and scalp.

### B. Back Condition

Plaintiff alleges that he has a long history of chronic back pain. Just weeks prior to the removal of the lesion from his scalp, in December 2004, Plaintiff also underwent magnetic resonance imaging (MRI) of his back which showed "[a] large r[ight] sided disc extrusion at L5S1 with mass effect on the existing S1 nerve root." (Compl. at 30.) Based on this MRI it was recommended that Plaintiff be referred to an outside consultant for further treatment. Due to his subsequent lesion removal and reconstructive surgery, however, Plaintiff did not receive further back treatment before being released on parole.

In October 2005, while on parole, Plaintiff was involved in

a serious motor vehicle accident in which he sustained multiple injuries including "fractured ribs, [a] fractured left hip, torn posterior krushet ligamen [sic] in [his] left knee, and other lacerations and abraisions [sic]." (Amend. Compl. at 7.) Plaintiff was hospitalized at UUMC for four days before being transported to the Utah State Prison infirmary, following revocation of his parole for "D.U.I. while on parole." (Amend. Compl. at 8.) Plaintiff remained in the prison infirmary for twelve more days.

Shortly after his discharge from the infirmary, Plaintiff submitted health care requests seeking treatment for his chronic back pain, including followup on the MRI performed in 2004. Plaintiff states that he filed numerous health care requests "for medication and to be seen for his chronic back pain," however, he was not sent to UUMC for another MRI until February 3, 2006. After this second MRI Plaintiff underwent months of additional testing and diagnosis before having back surgery on December 6, 2006. Plaintiff does not appear to challenge the quality of care he received up to and including his back surgery, however, he asserts that the ten month delay between filing his first health care request and receiving treatment amounted to cruel and unusual punishment.

Plaintiff does challenge the followup care he received at the prison after his surgery; specifically, Plaintiff alleges

that prison medical staff refused to provide him certain medications for his back pain.  Plaintiff states that he was prescribed Neurontin and Tramadol following his surgery, however, a little over a month after surgery prison staff told Plaintiff that Neurontin would no longer be available and that Elavil would be prescribed instead.  Plaintiff asserts that based on his own research Elavil is not an appropriate replacement for Neurontin.  Plaintiff alleges that he complained about the Elavil during his followup visits to UUMC and doctors again prescribed Neurontin, however, prison staff continued to provide only Elavil, allegedly stating "we don't have to follow those recommendations from [U]UMC."

### IV. Legal Standard for Failure to Provide Medical Care Claims

In *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Greg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909 (1976), proscribed by the Eighth Amendment."  *Estelle*, 429 U.S. at 104.  "Deliberate indifference involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994).  A medical need is sufficiently serious "if it is one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).

The subjective component is met only if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Allegations of mere negligence in diagnosing or treating a medical condition, *Estelle*, 429 U.S. at 105, or "inadvertent failure to provide adequate medical care," *Riddle v. Mondragon*, 83 F.3d 1197, 1203 (10th Cir. 1996), are insufficient to state a claim under the Eighth Amendment. "Delay in [providing] medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210. The Tenth Circuit has held that the "substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 949, 950 (10th Cir. 2001).

### V. Sufficiency of Plaintiff's Complaint

#### A. Scalp Lesion

The Court first addresses Plaintiff's allegations regarding the treatment of his scalp lesion. At the heart of this claim is Plaintiff's assertion that removal of the lesion was cruel and unusual because the lesion was later determined not to be

cancerous. This assertion, however, is not only fundamentally flawed but also at odds with the medical records included with the Complaint. Attached to Plaintiff's Complaint is a letter from Dr. Sharma dated April 5, 2006, in which he explains to Plaintiff: "you do have a diagnosis of a scalp melanoma of low risk," but "[e]xamination of the surgical specimen revealed that the entire melanoma had been excised." (Compl. at 49.) Moreover, even accepting Plaintiff's allegation that the lesion turned out not to be cancerous, removal may still have been prudent given Plaintiff's medical and family history and the risks associated with foregoing treatment.

Finally, even if Plaintiff could show that removal of the lesion was not medically necessary, his allegations would, at best, support only a claim of medical malpractice. It is well established, however, that "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Ferranti v. Moran*, 618 F.2d 888, 891 (1st Cir. 1980). Based on the extensive, timely, treatment Plaintiff received for his scalp lesion it appears that Plaintiff's dispute is primarily over the adequacy of the

treatment he received, not a failure to provide necessary treatment in the first place.  Thus, the Court concludes that Plaintiff's allegations regarding treatment of his scalp lesion do not rise to the level of a constitutional violation, and must be dismissed for failure to state a claim.

### B. Back Treatment

Plaintiff's allegations regarding treatment of his back condition are similarly flawed.  Plaintiff has not specifically alleged that the delayed resumption of treatment for his back condition, following revocation of his parole, caused any significant injury.  Given the chronic nature of his back problems, it does not appear that the alleged delay significantly worsened Plaintiff's prognosis or subjected him to the type of "considerable pain" required to state a constitutional violation.  More importantly, Plaintiff does not allege specific facts showing that the delays resulted from deliberate indifference by Defendants; instead, it appears that Plaintiff's continued recovery from the injuries sustained in the car accident may have contributed to the delay.  And, Plaintiff's claim of deliberate indifference is belied by the extensive medical care he admittedly received for his back condition prior to his parole.

Finally, the Court addresses Plaintiff's allegations regarding denial of adequate medication for back pain.  Plaintiff's allegation that UUMC physicians recommended a

specific drug following surgery, and that prison medical staff opted to provide a substitute drug instead, do not support a finding of deliberate indifference.  While prison officials are constitutionally required to ensure that inmates receive adequate care, specific decisions as to which particular drug an inmate receives are left to the discretion of prison medical personnel and may legitimately be influenced by considerations such as cost and availability.  Plaintiff does not allege that UUMC doctors mandated Plaintiff receive a specific drug, nor does he allege that they determined the drug provided by the prison not to be a viable substitute.  Plaintiff's reliance on prescription drug reference books, and his own lay opinion, to support his assertion that the substitute drug provided was inadequate are unavailing.  In sum, Plaintiff's allegations regarding denial of medication for his back condition show only a difference of opinion regarding the appropriate medication for his condition.  However, such a "mere difference of opinion" does not support a claim of cruel and unusual punishment.  *See Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)*.

     Thus, the Court concludes that Plaintiff's allegations regarding delayed treatment and denial of specific medication for his back condition fail to state a claim on which relief can be granted.

## **CONCLUSION AND ORDER**

Based on a careful review of the pleadings and accompanying documentation the Court concludes that Plaintiff's Complaint and Amended Complaint fail to state a viable claim for relief under 42 U.S.C. § 1983.  Moreover, given the well-settled nature of the law governing Plaintiff's causes of action, and the thoroughness of his pleadings, the Court concludes that it would be futile to allow Plaintiff further opportunity to amend.  This is not a case where Plaintiff's "factual allegations are close to stating a claim but are missing some important element that may not have occurred to him."  *Reynoldson v. Shillinger*, 907 F.2d 124, 126-27 (10th Cir. 1990).

Accordingly, **IT IS HEREBY ORDERED** that this case is **dismissed** under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief can be granted.  *See* 28 U.S.C.A. § 1915 (West 2007).

DATED this 21st day of June, 2007.

BY THE COURT:

_____
Dale A. Kimball
United States District Judge